UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHER DIVISION

PETER BORMUTH,

       Plaintiff,

                         Case No. 11-CV-11354
                         HON. GEORGE CARAM STEEH

v.

THE DAHLEM CONSERVANCY
and BRAD WHALEY, Executive Director.

       Defendants.
_____/

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(1),(6) [DOC. 7]

Before the court is a motion to dismiss. Defendant Dahlem Conservancy is a private, non-profit corporation operating an environmental education center on about 300 acres of land that is open to the general public. Plaintiff Peter Bormuth, who identifies himself as an animist and pagan, has visited the Dahlem Conservancy since 1975 until January 21, 2011, when he was asked not to return. Plaintiff asserts two claims against the Dahlem Conservancy and its director, Brad Whaley (collectively, "the Conservancy"). One alleges a First Amendment violation and the other alleges religious discrimination under Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a, which addresses public-accommodation discrimination. For the reasons that follow defendant's motion to dismiss should be GRANTED.

BACKGROUND

The Dahlem Conservancy is a non-profit corporation under the Michigan Nonprofit Incorporation Act. It is principally funded by private membership fees and private contributions and does not rely on state or municipal tax-payer funding. The Dahlem Conservancy is open to the public and uses the word "public" in marketing materials, including on its website which stated, "The Dahlem Conservancy is a public non-profit organization that manages and funds the Dahlem Center." The Dahlem Conservancy operates an environmental education center that sits on about 300 acres of land. Plaintiff is an animist and pagan and claims to have been visiting the Dahlem Conservancy without any problems since 1975.

On September 28, 2011, the Jackson Citizen Patriot published a letter written by plaintiff which criticized the Dahlem Conservancy for using a Diesel, rather than electric, cart on its property. After that letter was published, plaintiff "continued that discussion" by posting emails on the Dahlem Center's "contact the Dahlem" option on their website. On December 16, 2010, plaintiff sent an email message to the Conservancy, stating, in part:

> tell your groundsman that the next time i see him driving that diesel cart just because he is too lasy [sic] to walk i will either have the spirits drop a widow maker on him putting him in a wheel chair the rest of his life or since diesel fuel is a known cause of bladder cancer I will have the spirits send him an appropriate dose.

In response, on December 19, 2010 Whaley sent an email message to plaintiff, inviting him to talk in person to address the matter. Plaintiff responded on December 21, 2010, stating, "I fully assure you that i will take no physical action to harm anyone at the Dahlem, nor would i ever suggest that anyone else do so." Whaley responded that same day that he

would like to meet face-to-face to discuss the comments in plaintiff's original email, and that such a meeting was important for their "continued relationship." To that, plaintiff responded:

> How i pray and what i pray for are none of your business. You, your staff, your members, and the general public i meet on the trails, are all perfectly safe from any verbal or physical intimidation or assault on my part. I already told you i try to be courteous to everyone. And your property is safe.

During a meeting between plaintiff and Whaley on December 29, 2010, plaintiff repeated that he would not take physical action to harm anyone at Dahlem, but did not apologize for his original statement. On January 21, 2011, Whaley sent a letter to plaintiff, banning him from the property:

> After considerable thought I have decided to restrict your access to Dahlem Center property. The restriction is imposed primarily because of the statements made in your December email that I believe constituted a threat to one of our employees. Although you indicated in a subsequent email that you would take no physical action to harm anyone at the Dahlem, when we met on December 29th to discuss your statements you indicated you were unwilling to apologize for your threatening remarks.

On April 1, 2011, plaintiff filed a complaint, alleging that his exclusion from the Dahlem Conservancy was in violation of both the First Amendment and Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a. Defendant then filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and (6) on April 22, 2011 for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted.

## STANDARD OF REVIEW

A. <u>Motion to Dismiss for Failure to State a Claim</u>

Rule 12(b)(6) allows the Court to make an assessment as to whether the plaintiff has stated a claim upon which relief may be granted. Under the Supreme Court's recent

articulation of the Rule 12(b)(6) standard in Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1964-65 (2007), the Court must construe the complaint in favor of the plaintiff, accept the allegations of the complaint as true, and determine whether plaintiff's factual allegations present plausible claims.  To survive a Rule 12(b)(6) motion for dismissal, plaintiff's pleading for relief must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Ass'n of Cleveland Fire Fighters v. City of Cleveland, 502 F.3d 545, 548 (6th Cir. 2007) (quoting Bell Atlantic, 127 S. Ct. at 1964-65) (citations and quotations omitted).  Even though the complaint need not contain "detailed" factual allegations, its "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." Id. (citing Bell Atlantic, 127 S. Ct. at 1965).

B.  Motion to Dismiss for Lack of Jurisdiction Over Subject Matter

Federal Rule of Civil Procedure 12(b)(1) authorizes a court to dismiss a claim for lack of jurisdiction over the subject matter.  Where subject matter jurisdiction is challenged, the plaintiff has the burden of proving jurisdiction in order to survive the motion. Kinsey v. Kinsey, 98 F.Supp.2d 834, 835 (N.D. Ohio 2000) (quoting RMI Titanium Co. v. Westinghouse Elec. Corp., 78 F.3d 1125, 1134 (6th Cir.1996)); Rogers v. Stratton Industries, Inc., 798 F.2d 913, 915 (6th Cir. 1986).  "The court has wide discretion to consider materials outside the complaint in assessing the validity of its jurisdiction." Ohio Nat'l Life Ins. Co. v. United States, 922 F.2d 320, 325 (6th Cir.1990).

ANALYSIS

A. First Amendment Claim

Constitutional protections are triggered only in the presence of state action and a private entity acting on its own cannot deprive a citizen of First Amendment rights. See, e.g., Flagg Brothers Inc. v. Brooks, 436 U.S. 149, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978) ("most rights secured by the Constitution are protected only against infringement by governments"); Hudgens v. NLRB, 424 U.S. 507, 513 (1976) ("It is, of course, a commonplace that the constitutional guarantee of free speech is a guarantee only against abridgment by government, federal or state."). A plaintiff must usually rely on 42 U.S.C. § 1983 to assert a claim against a private entity. Section 1983 provides:

> Every person who under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

Section 1983 has two basic requirements: (1) state action that (2) deprived an individual of federal statutory or constitutional rights. Flint ex rel. Flint v. Kentucky Dept. of Corrections, 270 F.3d 340, 351 (6th Cir. 2001). Thus, a private entity can be held to constitutional standards when its actions so approximate state action that they may be fairly attributed to the state. See, e.g., American Manufacturers Mutual Insurance Co. v. Sullivan, 526 U.S. 40, 49-50 (1999); Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922, 937, (1982). The Sixth Circuit has three tests for state action: (1) the public function test; (2) the state compulsion test; and (3) the symbiotic relationship or nexus test. Lansing v. City of

Memphis, 202 F.3d at 828; Ellison v. Garbarino, 48 F.3d 192, 195 (6th Cir. 1995); Wolotosky v. Huhn, 960 F.2d 1331 (6th Cir. 1992).

The public function test requires that the "private entity exercise powers which are traditionally exclusively reserved to the state, such as holding elections or eminent domain." Wolotsky, 960 F.2d at 1335 (internal citations omitted).  Plaintiff's allegations that the Conservancy "is devoted to a public purpose" are not enough to satisfy this standard.  See Lansing, 202 F.3d at 825 (holding that an annual festival organized "to generate tourism, foster international commercial trade and enhance the quality of life in the Memphis-Mid-South area" did not meet the public function test.).  Courts have not ruled that the operation of a public park is per se a public function.  In fact, the United States Supreme Court stated in Flagg Bros. v. Brooks, 436 U.S. 149, 159 n.8 (1978), that the operation of a park for is not an exclusive public function.  Thus the plaintiff has failed to demonstrate state action under the public function test.

The state compulsion test requires that a state "exercise such coercive power or provide such significant encouragement, either overt or covert, that in law the choice of the private actor is deemed to be that of the state." Wolotsky, 960 F.2d at 1335.  Plaintiff argues that Whaley's threats of contacting a law enforcement agency in the event that plaintiff fails to comply with the prohibition from the Conservancy amounted to state action.  The court in Lansing v. City of Memphis, however, held that the involvement of police officers in the defendant's removal from a property did not amount to state compulsion.  202 F.3d at 829. Thus, the threat of law enforcement action presented here does not convert a private entity into a state actor.

Under the nexus test, "the action of a private party constitutes state action when there is a sufficiently close nexus between the state and the challenged action of the state itself." Wolotsky, 960 F.2d at 1335. Although previous cases establish no clear standard for identifying a "sufficiently close nexus," they have identified some factors which are insufficient. Lansing, 202 F.3d at 830. Among them are "the mere presence of state regulation, even if extensive"; "public funding or the private use of public property"; and "the presence of a minority of public officials on the board of a private entity." Id. at 830-831 (no nexus existed where a not-for-profit entity received funding from local government, two out of nine board members were selected by city and county representatives, and it leased public property). Thus the Conservancy's tax exempt status, the fact that it has a non-voting ex officio Board member from the Jackson Community College, and the fact that it leases community-college property, all fail to establish a sufficiently close nexus. See, e.g. Wolotsky, 960 F.2d at 1336 (ruling that the fact that a not-for-profit "derives a significant portion of its funding from the government does not convert it into a state actor."); Lansing, 202 F.3d at 831 ("The minority presence of public officials on the board of a private entity does not render the entity a state actor"); Wolotsky, 960 F.2d at 1336 (ruling that the fact that a not-for-profit "leased one of its facilities from the state at a nominal fee does not make plaintiff's discharge state action.").

B.  Religious Discrimination Claim

Plaintiff further alleges religious discrimination under 42 U.S.C. § 2000a. Title II of the Civil Rights Act of 1964 ("Title II") prohibits discrimination on the basis of race, color, religion or national origin in places of public accommodation. Title II authorizes a civil action

for preventative relief, including a permanent or temporary injunction, to prohibit such discrimination in a place of public accommodation. 42 U.S.C. § 2000a-3(a). "However, if the state where the alleged act occurred has a state or local law prohibiting discrimination in a place of public accommodation and if the state has established or authorized a state or local authority to grant relief for such discrimination . . . then no action can be brought under Title II until a written complaint has been filed with that authority at least thirty days from the filing of the complaint have expired." S.G. v. CBL & Assoc. Mgmt., Inc., 2010 WL 74731, at *2 (E.D. Tenn. Feb. 26, 2010); 42 U.S.C. § 2000a-3(c). While there is no requirement that the plaintiff exhaust their administrative remedies, they are required to provide notification. See id.

Michigan prohibits religious discrimination in the provision of public accommodations. See, e.g., Mich. Comp. L. § 750.146 (discussing equal access in public accommodations). The Civil Rights Commission within the Michigan Department of Civil Rights ("MDCR") has jurisdiction over religious public-accommodation claims. See Mich. Const. of 1963 Art 5 § 29; Mich. Admin. Code R. 37.1 ("The Civil rights within the jurisdiction of the commission shall be those guarantees by law and the constitution including . . . the areas of . . . equal protection [in] public accommodations."). Plaintiff claims that he contacted the MDCR on January 25, 2011 after receiving Whaley's letter banning him from the Dahlem property. He claims that the receptionist told him that since his complaint did not involve employment, it was not within MDCR's jurisdiction and for that reason he pursued the matter in Courts. He further states to have contacted the MDCR on May 3, 2011, after receiving the defendant's motion to dismiss, and was once again told that his complaint was not in MDCR's jurisdiction. At that time, he asked to speak with the supervisor and told her that for the

purposes of these court proceedings, he needed paperwork from MDCR to affirm what he had been told over the phone. Plaintiff then received documents to file a formal complaint and returned it to MDCR's supervisor on May 5, 2011. Defendants argue that because plaintiff failed to notify the MDCR of his claim before initiating suit in this court, the court lacks subject matter jurisdiction.

A recent Supreme Court decision cautions that not all procedural rules should be referred to as jurisdictional and that there must be a "clear indication that Congress wanted the rule to be jurisdictional." Henderson ex rel. Henderson v. Shinseki, 131 S. Ct. 1197, 1203 (2011). Title II, in plain language, precludes the federal courts from proceeding without first giving the state an opportunity to remedy the situation, assuming that the state in question has a state or local law on the subject. 42 U.S.C. § 2000a-3(c).[1] Further, "[w]hen 'a long line of this Court's decisions left undisturbed by Congress has treated a similar requirement as jurisdictional, [the Court] will presume that Congress intended to follow that course." Henderson, 131 S. Ct. at 1203 (internal citations omitted). There is a vast number of circuit and district court, as opposed to Supreme Court, cases that treat Title II notification requirements as jurisdictional without any interference by Congress. See, e.g., Bilello v. Kum & Go, LLC., 374 F.3d 656, 659 (8th Cir. 2004) ("Since the requirements of 2000a-3(c) are jurisdictional, we join the Seventh and Tenth Circuits in holding these procedural prerequisites must be satisfied before we have jurisdiction over a section 2000a claim.");

---

[1] The language of the statute is as follows: "In the case of an alleged act or practice prohibited by this chapter which occurs in a State . . . which has a State or local law prohibiting such act or practice and establishing or authorizing a State or local authority to grant or seek relief from such practice . . . no civil action may be brought . . before the expiration of thirty days after written notice of such alleged act or practice has been given to the appropriate State or local authority . . . ."

Stearns v. Baur's Opera House, Inc., 3 F.3d 1142 (7th Cir. 1993) (dismissing case for lack of jurisdiction because plaintiff did not meet the "procedural prerequisites of section 2000a-3(c.)"; Harris v. Ericson, 457 F.2d 765, 767 (10th Cir. 1972) ("we agree that any outlawing of the doctrine of *exhaustion* of remedies does not negate the earlier requirement of the statute that before federal action . . . the state must be given the *opportunity* to invoke its remedies."); S.G., 2010 WL 743741 at *2 ("This requirement to notify the proper state or local authority, where one exists, is jurisdictional in nature."); Halton v. Great Clips, Inc., 94 F.Supp.2d 856, 860 (N.D.Ohio 2000) ("Defendants argue that in Ohio, a plaintiff must satisfy the jurisdictional prerequisite before bringing a claim under 42 U.S.C. § 2000a . . . Plaintiffs do not dispute the assertion that a jurisdictional prerequisite must be satisfied."). Thus, defendants argue that plaintiff must show that he met the 2000a-3(c) jurisdiction requirement by notifying an appropriate state agency before initiating this process in federal court.

Given the recency of the opinion in Henderson, supra, the parties have not provided a thorough analysis on this issue for the court to come to a firm conclusion regarding Congressional intent. Furthermore, even though plaintiff can now show that he initiated a process with a state administrative agency after the filing of his complaint here, this court may still lack subject matter jurisdiction over the claim. Title 28 U.S.C. § 1653 provides that "[d]efective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts." The Supreme Court has interpreted the statute to mean that it "addresses only incorrect statements about jurisdiction that actually exists, and not defects in the jurisdictional facts themselves." Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826, 831 (1989). Thus, "[a] party may not add to a complaint new facts necessary to subject matter

jurisdiction in order to avoid dismissal on the basis of lack of subject matter jurisdiction." S.G., 2010 WL 743731, at 3.

It is unnecessary to reach a conclusion on the issue of whether 42 U.S.C. § 2000a-3(c)'s notification requirement is jurisdictional, however, because plaintiff's claim still fails to set forth a tenable claim of religious discrimination under § 2000a. To prove the claim, plaintiff would have to demonstrate that he was denied a public accommodation because of his religion. Where there is no allegation suggesting direct evidence of discrimination, he must satisfy the traditional McDonnell Douglas burden shifting analysis. See McCoy v. Homestead Studio Suites Hotels, 390 F. Supp. 2d 577, 584-85 (S.D. Tex. 2005); McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). To establish a prima facie case under §2000a, plaintiff must show that he or she (1) is a member of a protected class; (2) attempted to exercise the right to full benefits and enjoyment of a place of public accommodation; (3) was denied those benefits and enjoyment; and (4) was treated less favorably than similarly situated persons who are not members of the protected class. McCoy, 390 F. Supp. 2d at 584-85.

Plaintiff argues the fourth prong of this analysis by pointing to a hunter who fired at a deer in the evening during the holiday season and was not banned from the Conservancy. The facts of this case, however, distinguish the plaintiff from the hunter in such a way that the two cannot be considered similarly situated. The hunter fired shots at the Conservancy during the holiday season, when the Conservancy was closed, thus his actions did not directly threaten anyone. By contrast, plaintiff wrote an email to the Conservancy directly threatening the health and safety of one of its employees. Further, the evidence of plaintiff's

conduct is admitted and clear, whereas the quality of evidence supporting conclusions about the deer hunter's conduct is much less compelling.

Moreover, plaintiff himself admits that he was allowed to visit the Conservancy freely for years, regardless of his religion and for months after his letter to the editor. Under the burden-shifting analysis, the Conservancy has identified non-discriminatory reasons for plaintiff's exclusion; namely, his threat to one of their employees as well as his unwillingness to apologize for his threatening remarks. Although plaintiff claims that Whaley's concern was misplaced after plaintiff reassured him that he would not actually cause harm to anyone, courts have held that violent threats are a non-discriminatory reason under this analysis. See generally Smith v. Leggett Wire Co., 220 F.3d 752, 759 (6th Cir. 2000) (race discrimination in employment; "Smith's death threat constituted a legitimate nondiscriminatory reason for firing him."); Green v. Burton Rubber Processing, Inc., 30 Fed. Appx. 466, 470 (6th Cir. 2002) ("We agree with the Seventh Circuit that employees who threaten violent acts cannot be reasonably accommodated . . . ."). Since plaintiff cannot show that this non-discriminatory reason was pretextual, plaintiff fails to establish a substantive claim of religious discrimination under Title II.

## CONCLUSION

For the reasons stated above, defendant's motion to dismiss is GRANTED.

Dated: July 26, 2011

                                        S/George Caram Steeh
                                        GEORGE CARAM STEEH
                                        UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on July 26, 2011, by electronic and/or ordinary mail and also to Peter Bormuth, 6096 Browns Lake Road Jackson MI 49203.

S/Josephine Chaffee
Deputy Clerk